LIU, J.,
Concurring. — In People v. Bailey (1961) 55 Cal.2d 514 [11 Cal.Rptr. 543, 360 P.2d 39] (Bailey), we held that when a defendant unlawfully takes property from the same victim on multiple different occasions, the defendant has committed only one theft if the various takings were committed pursuant to “one intention, one general impulse, and one plan.” (Id. at p. 519.) The court today holds that under a proper constmction of the Bailey rule, defendant committed 20 thefts, not one, on these facts. I agree and therefore *744 join the court’s opinion. But the court merely assumes, without deciding, that the Bailey rule applies here. (Maj. opn., ante, at p. 740.) I write separately to explain that the Bailey rule necessarily applies in this case because Bailey defined what constitutes a single theft within the meaning of Penal Code section 484. That holding applies to all categories of theft.
The central question addressed by the parties in this case was “whether the Bailey rule regarding a series of petty thefts applies similarly to a series of grand thefts.” (Maj. opn., ante, at p. 740.) In declining to answer this question, the court leaves unresolved the “recurring issue” of “whether successive acts of theft constitute separate crimes or a single crime.” (2 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Crimes Against Property, § 12, p. 34.) The proper unit of prosecution is a question of legislative intent that arises when interpreting any criminal statute. (See Sanabria v. United States (1978) 437 U.S. 54, 70 [57 L.Ed.2d 43, 98 S.Ct. 2170] [“Whether a particular course of conduct involves one or more distinct ‘offenses’ under the statute depends on . . . congressional choice.”]; see generally Note, Counting Offenses (2009) 58 Duke L.J. 709.) Answering a unit of prosecution question requires courts to determine when “the actus reus prohibited by the statute— the gravamen of the offense — has been committed more than once.” (Wilkoff v. Superior Court (1985) 38 Cal.3d 345, 349 [211 Cal.Rptr. 742, 696 P.2d 134], superseded by statute on other grounds as stated in People v. Arndt (1999) 76 Cal.App.4th 387, 393-394 [90 Cal.Rptr.2d 415]; see, e.g., In re Carleisha P. (2006) 144 Cal.App.4th 912, 919 [50 Cal.Rptr.3d 777]; People v. Washington (1996) 50 Cal.App.4th 568, 576-577 [57 Cal.Rptr.2d 774].)
Bailey necessarily answered the unit of prosecution question for all thefts, not just petty thefts. The crime of “theft” is defined by Penal Code section 484. In turn, a grand theft is defined to include any “theft” in which property of a certain value has been taken. (Pen. Code, § 487, subd. (a); all undesignated statutory references are to the Penal Code.) All thefts that are not grand thefts are petty thefts. (§§ 486, 488.) Because the same definition of theft applies to grand thefts and petty thefts, the question whether a series of related takings constitutes one or several thefts within the meaning of section 484 is necessarily common to both grand thefts and petty thefts. (See Gomez v. Superior Court (1958) 50 Cal.2d 640, 645 [328 P.2d 976] [“The distinctions between grand and petty theft according to the Penal Code are in the type of article stolen, whether the article was taken from the person of another and in the value thereof. (Pen. Code, §§ 484, 487, 487a, 488.) The elements of the crime remain the same with the exceptions noted.”].)
We have authority to interpret what constitutes one discrete theft within the meaning of section 484, as well as what the enumerated bases for grand theft in section 487 mean. But we have no authority to invent new types of grand theft beyond those authorized by the Legislature. (See People v. Superior *745 Court (Romero) (1996) 13 Cal.4th 497, 516 [53 Cal.Rptr.2d 789, 917 P.2d 628] [“ ‘the power to define crimes and fix penalties is vested exclusively in the legislative branch’ ”]; People v. Harrison (1989) 48 Cal.3d 321, 332 [256 Cal.Rptr. 401, 768 P.2d 1078] [the “court is not to sit as a ‘super-legislature’ altering criminal definitions”]; In re Lynch (1972) 8 Cal.3d 410, 414 [105 Cal.Rptr. 217, 503 P.2d 921].) It would have been surprising for Bailey to have invented a new, nonstatutory category of grand theft out of multiple petty thefts because one of the enumerated types of grand theft at the time pertained to multiple acts of petty theft by an employee against his or her employer over a 12-month period. (§ 487, subd. (b)(3).) When the Legislature wants to allow aggregation of separate petty thefts into a single grand theft, it knows how to say so. (See §§ 484g, 484h [allowing aggregation of all thefts in a six-month period involving the use of the same forged or stolen credit card].) Our decision in Bailey must be understood as having announced a general rule for determining what conduct, as a definitional matter, constitutes a single theft — not a special equitable rule, unmoored from the statutory definition of theft, that permits multiple small takings, but only small takings, to be aggregated into a single larger theft.
The welfare payments the defendant in Bailey received were small enough that, taken alone, each payment would have constituted a petty theft. But Bailey said the question presented was “whether [the defendant] was guilty of grand theft or of a series of petty thefts . . . .” (Bailey, supra, 55 Cal.2d at p. 518, italics added; see id. at p. 519 [“The test applied in [three Court of Appeal] cases in determining if there were separate offenses or one offense is whether the evidence discloses one general intent or separate and distinct intents.” (italics added)].) The repeated use of the disjunctive term “or” shows that Bailey was answering a unit of prosecution question, i.e., whether the acts in question constituted one offense or several offenses. Bailey was not crafting a novel rule that allows a defendant to be found guilty of a single grand theft in circumstances where the defendant could also be found guilty of multiple petty thefts.
This explains why Bailey said the rule it announced also applies to the determination of when multiple large takings constitute one grand theft as opposed to several smaller grand thefts: “[A] defendant may be properly convicted upon separate counts charging grand theft from the same person if the evidence shows that the offenses are separate and distinct and were not committed pursuant to one intention, one general impulse, and one plan.” (Bailey, supra, 55 Cal.2d at p. 519.) The fact that Bailey was defining what constitutes a single theft, whether petty or grand, explains why the court felt it was necessary to address when multiple large takings constitute only one grand theft. Bailey was not considering two separate questions — i.e., (1) “When do'several small takings constitute a single grand theft?” and (2) “When do several large takings constitute only one larger grand theft?” *746 Instead, it was answering both questions simultaneously because those two questions are actually the same question: “When does a series of multiple related takings constitute only one theft?”
Over the five decades since Bailey was decided, the Courts of Appeal have consistently understood that Bailey was answering this definitional unit of prosecution question. (See People v. Jaska (2011) 194 Cal.App.4th 971, 980 [123 Cal.Rptr.3d 760] [Bailey “considered ‘whether [the defendant] was guilty of grand theft or of a series of petty thefts’ ” (italics added)]; People v. Tabb (2009) 170 Cal.App.4th 1142, 1148-1149 [88 Cal.Rptr.3d 789] [collecting cases]; People v. Kronemyer (1987) 189 Cal.App.3d 314, 363 [234 Cal.Rptr. 442] [“A single criminal plan completed by a series of transactions over a period of time, each requiring the execution of separate documents to complete, constitutes but one crime.” (italics added)]; People v. Brooks (1985) 166 Cal.App.3d 24, 30 [210 Cal.Rptr. 90] [explaining that Bailey answered the “especially thorny” problem “of whether successive acts constitute separate crimes or a single crime” (italics added)]; People v. Packard (1982) 131 Cal.App.3d 622, 626 [182 Cal.Rptr. 576] [citing Bailey for “the well-established rule that in a series of takings from the same individual, there is a single theft if the takings are pursuant to one continuing impulse, intent, plan or scheme, but multiple counts if each taking is the result of a separate independent impulse or intent”]; People v. Richardson (1978) 83 Cal.App.3d 853, 866 [148 Cal.Rptr. 120] [“The test applied in theft prosecutions in determining if there are separate offenses or one offense is whether the evidence discloses one general intent or distinct and separate intents.”]; People v. Neder (1971) 16 Cal.App.3d 846, 852 [94 Cal.Rptr. 364] [“In cases involving theft (by larceny, false pretenses, or embezzlement), where several takings are motivated by ‘one intention, one general impulse and one plan,’ the entire transaction is held to be a single crime.”].)
The Attorney General argues that Bailey’s discussion of when multiple large takings constitute a single grand theft was dictum. She urges us to hold that multiple large takings constitute one grand theft if and only if they occur as part of a single transaction. By contrast, she says, multiple small takings may be treated as a single grand theft so long as each taking shares a common scheme or modus operandi. When asked at oral argument whether there could be any analytical justification for this uneven result, the Attorney General said, “I think there are policy reasons that it is justifiable. I don’t know that analytically it is justifiable.” But we are not free to invent new crimes, including new categories of grand theft, merely because there may be good policy reasons for us to do so. The Attorney General’s policy argument is properly addressed to the Legislature. The Bailey rule necessarily applies with equal force regardless of whether the serial takings in question would each constitute a petty theft or a grand theft if considered in isolation.
*747 Further, the Attorney General contends, as did the Court of Appeal below, that permitting multiple large takings to be treated as a single grand theft in some circumstances will give thieves an incentive to commit more thefts because they will face no additional criminal liability for additional takings. Today’s opinion clarifies that no such “ “felony discount” ’ ” is available when a defendant takes “separate and distinct” actions that result in obtaining property from the same victim on “separate and distinct” occasions even if the defendant utilizes a similar or identical modus operandi. (Maj. opn., ante, at pp. 740-741.) But to the extent the Bailey rule provides any “discount” to defendants who take property pursuant to “one intention, one general impulse, and one plan” (Bailey, supra, 55 Cal.2d at p. 519), it is up to the Legislature to determine whether the rule should be otherwise.
As noted, the Legislature has responded to precisely such concerns in the limited contexts of credit card theft (§§ 484g, 484h) and theft by employees against their employers (§ 487, subd. (b)(3)). (Cf. People v. Correa (2012) 54 Cal.4th 331, 345-346 [142 Cal.Rptr.3d 546, 278 P.3d 809] [documenting the Legislature’s decision to override the Court of Appeal’s unit of prosecution analysis with respect to former § 12020, which prohibits possession of sawed-off shotguns].) At the same time, there are reasons why the Legislature might hesitate to treat every taking as a separate theft. For example, reasonable minds can differ as to whether a defendant who accepts 12 fraudulently obtained payments of $1,000 per month during a single year from the same victim is 12 times more blameworthy than a defendant who successfully plots for an entire year to steal $25,000 from the same victim. Moreover, the Legislature has already provided a mechanism for imposing additional punishment where a series of related takings, each of which is large enough to qualify as grand theft, results in aggregate losses exceeding specified amounts. (§ 12022.6, subds. (a), (b).) We have no authority to supplement the statutory scheme with our own policy judgments as to the relative blameworthiness of various theft acts.
Applying the Bailey rule evenhandedly to petty thefts and grand thefts will not unduly limit a prosecutor’s charging discretion. If a defendant has engaged in multiple related takings, a prosecutor is not prohibited from charging the defendant both with one count of a larger (aggregated) theft and with several counts of smaller (individual) thefts. A prosecutor may charge a defendant under both theories, since it may not be evident at the time of charging whether the takings were “committed pursuant to one intention, one general impulse, and one plan.” (Bailey, supra, 55 Cal.2d at p. 519; see ibid. [“Whether a series of wrongful acts constitutes a single offense or multiple offenses depends upon the facts of each case . . . .”].) But the jury may only convict the defendant of either the aggregated theft or one or more separate thefts, depending on whether the takings were committed pursuant to the *748 same intention, general impulse, and plan. If they were, then only a conviction on the aggregated offense is appropriate; if not, then no conviction on the aggregated offense is appropriate. The application of this rule does not and cannot turn on whether each taking, if considered in isolation, was a petty theft or a grand theft.
I conclude with a brief comment on the concerns raised by our dissenting colleague. Justice Rushing agrees with Justice Werdegar and me that “there can be no justification for varying the unit of prosecution in theft cases according to the value of the property taken.” (Dis. opn., post, at p. 766.) But his broader concern is that our holding today — “a defendant may be convicted of multiple counts of grand theft based on separate and distinct acts of theft, even if committed pursuant to a single overarching scheme” (maj. opn., ante, at p. 741) — largely displaces Bailey’s rule of aggregation for multiple takings “committed pursuant to one intention, one general impulse, and one plan” (Bailey, supra, 55 Cal.2d at p. 519). (Dis. opn., post, at pp. 750-755.)
Although this concern is prompted by a quite thoughtful review of the case law, it reads too much into what today’s opinion actually says. The terms “single overarching scheme” and “common scheme or plan,” as used in today’s opinion (maj. opn., ante, at p. 741), are properly understood to mean similarity in how a series of takings was performed, i.e., a modus operandi. Indeed, that is the basis for our conclusion that defendant committed 20 thefts, not one, on the facts here: Defendant stole 20 different vehicles from his employer on 13 different days, repeatedly using one of two fraudulent methods to execute the fake sales. We are careful to disapprove post-Bailey Court of Appeal decisions only to the extent they construed Bailey to find one theft “in cases like this.” (Maj. opn., ante, at p. 741.) Today’s opinion clarifies that a common scheme or modus operandi is different from a single impulse. In other words, separate and distinct takings do not fall under Bailey’s aggregation rule simply because, as here, they were all done the same way. But neither does the mere fact that multiple takings are separate and distinct entail a finding of multiple thefts in every case. If the takings were committed pursuant to a single intention, impulse, and plan, then under Bailey they amount to only one theft.
Of course, each case will continue to depend on its facts. Just as Bailey itself must “be interpreted in light of its facts” (maj. opn., ante, at p. 740), the same goes for our decision today. But apart from the need to treat petty thefts and grand thefts equally under Bailey, today’s decision does not portend the arbitrariness that Justice Rushing fears. Notably, although our opinion characterizes the facts of Bailey as involving “a single fraudulent act followed by a series of payments” (maj. opn., ante, at p. 740), Bailey is just as easily characterized as involving multiple acts (each receipt of a welfare payment *749 counts as one) pursuant to a single impulse or "initial design" (Bailey, supra, 55 Cal.2d at p. 518). Applying the relevant concepts-what is an "act," what is an "impulse"-will be straightforward in some cases and more challenging in others. But our decision does not require or encourage courts to start counting the number of tools in a stolen tool set, the number of trousers in a stolen wardrobe, or the number of arm movements in stealing several wristwatches from a carton. (Dis. opn., post, at pp. 753-755.) In this area, as in others, proper application of the law has much more to do with practical judgment than pure logic or metaphysics.