[No. D051402. Fourth Dist., Div. One. Jan. 30, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
EDWARD NATHANIEL TABB, SR., Defendant and Appellant.

1144

COUNSEL

Maureen J. Shanahan, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette and Gary W. Schons, Assistant Attorneys General, Gil Gonzalez and Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**O'ROURKE, J.**—A jury convicted Edward Nathaniel Tabb, Sr., of grand theft of personal property worth over $400 (Pen. Code,[1] § 487, subd. (a); count 1), grand theft by an employee (§ 487, subd. (b)(3); count 2) and petty theft with a prior (§§ 484, 666; count 3). Tabb later admitted allegations that he had four prior prison term convictions (§§ 667.5, subd. (b), 668). The trial court sentenced Tabb to a six-year state prison term consisting of a two-year midterm on count 1 plus four consecutive one-year terms for the four prison priors. It imposed a concurrent two-year term for count 3, stayed a two-year term for count 2 under section 654, and ordered victim restitution in the amount of $39,688 (§ 1202.4, subd. (f)).

On appeal, Tabb contends (1) his conviction for grand theft in count 1 must be reversed as a lesser included offense of grand theft by an employee in count 2; (2) there is insufficient evidence to establish certain elements of theft for all of the counts; and (3) there is insufficient evidence to support the restitution award. In supplemental briefing, Tabb contends that at most he should have been convicted of a single count of grand theft because counts 1 and 2 involved the same crime charged under different theories, and the petty theft of count 3 is a lesser included offense of both counts 1 and 2. We agree that on this record, the count 3 petty theft conviction must be reversed. We also agree that because grand theft by an employee is merely a species of grand theft, and the evidence does not permit an inference that Tabb's thefts from his employer were committed pursuant to separate and distinct intents or schemes, Tabb may be convicted of only one count of grand theft. Accordingly, we shall reverse Tabb's convictions on counts 2 and 3, and otherwise affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Between November 13, 2006, and March 31, 2007, Tabb brought materials to sell to A to Z Auto Dismantling (A to Z), a recycling company. Jack Bollina, a manager at A to Z, would take the materials in; identify, separate and weigh them; write Tabb a ticket; and send him to the office to get paid. Tabb would arrive on his bicycle with a yellow backpack and a satchel. At the time, Tabb told Bollina that he worked at NASSCO, a local ship manufacturing company. In fact, starting in mid-January 2007, Tabb worked for BAE Systems (BAE) as a runner or helper for the pipefitters. In the beginning, Tabb brought aluminum cans and bottles to A to Z. Starting on about January 24, 2007, and on a daily basis, Tabb started bringing in materials that could not be purchased on the commercial market: brass,

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

cupronickel,[2] and occasionally copper. The materials appeared to be used or new parts from ships. When Bollina asked Tabb where he was getting the materials, Tabb said they were throwaway parts that his boss permitted him to take. Becoming suspicious about the fact Tabb's recycling went from $10 to about $100 in materials each day, Bollina began taking pictures of the parts Tabb brought in and reporting the materials to his boss. He took a total of four pictures.

A to Z's office manager, Sue Wilson, kept a log of all the items Tabb brought in. She calculated that A to Z paid Tabb approximately $31,098.68 for the materials he brought to them. At some point, she attempted to contact a NASSCO representative, who eventually contacted BAE's security manager, Ed Lasater, who met with Wilson and reviewed the photographs and inventory. Lasater showed the A to Z pictures to the pipefitter superintendent, who identified them as items that would be in BAE's pipe shop.

When Tabb later returned to A to Z with a dozen brass fittings, Sue Wilson took photographs and called Lasater, who set up a search of Tabb's backpack. On April 4, 2007, Lasater conducted a search of Tabb's backpack and found eight or nine brass couplings and copper wire in his possession, which Tabb's supervisor determined belonged to the electrical department and was not trash or scrap material. Tabb's supervisor never gave Tabb permission to take any of the items to A to Z; they were expensive flanges or pieces used for ship repair work, not scrap metal. Tabb did not perform pipe fitting at BAE, and he was never given permission by his supervisor to leave the facility with those items or other items such as cupronickel flanges, brass and butterfly valves, and other fittings. There would be no job-related reason for Tabb to have such items in his possession and there was no policy to permit employees to take those kinds of items off the premises for recycling.

A police officer called to investigate Tabb's actions viewed a videotape of Tabb at A to Z bringing in brass pipe fittings and placing them on the scale. That video, as well as the photographs taken at A to Z, were also reviewed by Lasater and the superintendent of the pipe shop. BAE's director of material management, Patrick Frei, reviewed A to Z's invoice relating to Mr. Tabb's recycling activities and estimated BAE's loss in materials to be $39,688.

Tabb testified in his defense. He admitted taking bottles and cans to A to Z for recycling but denied taking any of the items depicted in the A to Z photographs from BAE. He claimed that the copper wire found on April 4, 2007, was his own wire.

---

[2] Cupronickel is an alloy of copper and nickel. (Encyclopaedia Britannica Online <http://www.britannica.com/EBchecked/topic/146752/cupronickel> [as of Jan. 30, 2009].) It is referenced as "cooper nickel" in the reporter's transcript.

The People charged Tabb in count 1 with grand theft of personal property, alleging that "[o]n or about and between" January 16, 2007 (when Tabb began working for BAE), and April 4, 2007, Tabb unlawfully took money and personal property of BAE of a value in excess of $400. They charged him in count 2 with grand theft by an employee, alleging that on or about and between January 16, 2007, and April 4, 2007, he took personal property from his employer of a value of $400 or more in a 12-consecutive-month period. Tabb was charged in count 3 with petty theft with a prior on allegations that on April 4, 2007, he stole the property of another and had previously been convicted of specified crimes. The jury convicted Tabb on all counts.

## DISCUSSION

### I. *Grand Theft by an Employee Is Not a Separate Offense, but a Species of Grand Theft*

Tabb contends his count 1 conviction for grand theft must be reversed as a lesser included offense[3] to the count 2 offense of grand theft by an employee. In supplemental briefing, Tabb argues that all of the theft counts involve the same crime and that as a result his conviction for grand theft (count 1) and his conviction for grand theft by an employee (count 2) are the same theft charged under different theories, improperly aggregating petty thefts into a grand theft. He relies primarily on *People v. Bailey* (1961) 55 Cal.2d 514 [11 Cal.Rptr. 543, 360 P.2d 39] (*Bailey*) and *People v. Packard* (1982) 131 Cal.App.3d 622 [182 Cal.Rptr. 576] (*Packard*). The People respond that under the only relevant test—the statutory elements test—grand theft is not a lesser included offense of grand theft by an employee because one can commit the latter crime without necessarily committing grand theft. They challenge the relevance of *Bailey* and *Packard* to the question of whether Tabb can be convicted of both count 1 and count 2.

■ Under the facts of this case, the parties' arguments as to lesser included offenses are misplaced. In *People v. Ortega* (1998) 19 Cal.4th 686 [80 Cal.Rptr.2d 489, 968 P.2d 48] (*Ortega*) (overruled on another point in *People v. Reed* (2006) 38 Cal.4th 1224 [45 Cal.Rptr.3d 353, 137 P.3d 184]), the court in the context of deciding whether theft is a necessarily included offense of robbery pointed out it was erroneous to "treat[] every form of theft as a separate offense." (*Ortega*, at p. 696.) It explained that the "crime of theft is divided into two degrees, grand theft and petty theft. (§ 486.) Grand

---

[3] "The terms 'necessarily included offense' and 'lesser included offense' have been used interchangeably by the courts in determining whether the rule against multiple convictions applies in any given case." (*People v. Sloan* (2007) 42 Cal.4th 110, 115, fn. 2 [64 Cal.Rptr.3d 137, 164 P.3d 568].)

theft, therefore, is not a separate offense, but simply the higher degree of the crime of theft." (*Ortega*, at p. 696.) It further explained that "[s]ection 487 defines grand theft to include theft of property worth more than $400 . . . and the theft of an automobile . . . . Several other statutes also define certain other forms of theft to be grand theft (e.g., §§ 487a [theft of the carcass of certain animals], 487d [theft of gold dust from a mining claim]). Section 488 states: 'Theft in other cases is petty theft.' " (*Ortega*, at p. 696.) *Ortega* demonstrates that grand theft by a servant, agent or employee is not a separate offense, but merely a form or species of grand theft.

■ Here, the jury concluded under unchallenged jury instructions[4] that as to the thefts occurring between January 16, 2007, and April 4, 2007, Tabb's thefts from BAE were inflicted under a "single, overall plan or objective." As Tabb points out, under these circumstances, he cannot be convicted of multiple grand thefts, let alone be punished for them, under different theories. This conclusion is compelled by *Bailey, supra*, 55 Cal.2d 514.

■ *Bailey* involved a defendant's felony grand theft conviction—then requiring theft of property worth more than $200 (*Bailey, supra*, 55 Cal.2d at p. 518)—where the defendant engaged in multiple acts of petty theft with the aggregate of the petty thefts totaling more than $200. In reversing the grant of a new trial on a claim of instructional error, the court stated: "The test applied in these cases in determining if there were separate offenses or one offense is whether the evidence discloses one general intent or separate and distinct intents. . . . [W]here a number of takings, each less than $200 but aggregating more than that sum, are all motivated by one intention, one general impulse, and one plan, the offense is grand theft. [Citations.] [¶] Whether a series of wrongful acts constitutes a single offense or multiple offenses depends upon the facts of each case, and a defendant may be properly convicted upon separate counts charging grand theft from the same person if the evidence shows that the offenses are separate and distinct and were not committed pursuant to one intention, one general impulse, and one plan." (*Bailey*, at p. 519; see also *People v. Kronemyer* (1987) 189 Cal.App.3d 314, 363–364 [234 Cal.Rptr. 442] [a single criminal plan completed by a series of transactions over a period of time, even if they each require execution of separate documents to complete, constitutes one crime]; *People v. Drake* (1996) 42 Cal.App.4th 592, 596 [49 Cal.Rptr.2d 765] [referring to principle as the

---

[4] The court instructed the jury with CALCRIM No. 1802 as follows: "If you conclude that the defendant committed more than one theft, you must then decide if the defendant committed multiple petty thefts or a single grand theft. To prove that the defendant is guilty of a single grand theft the People must prove that: [¶] 1) The defendant committed theft of property from the same owner or possessor on more than one occasion; [¶] 2) The combined value of the property was over $400; AND [¶] 3) The defendant obtained the property as part of a single, overall plan or objective. [¶] If you conclude that the People have failed to prove grand theft, any multiple thefts you have found proven are petty thefts."

"*Bailey* doctrine"].) "The single-intent-and-plan doctrine or test articulated in *Bailey* has been consistently applied in *theft* cases." (*People v. Washington* (1996) 50 Cal.App.4th 568, 575 [57 Cal.Rptr.2d 774].) Application of *Bailey* has also generally been limited to thefts involving a single victim. (*In re Arthur V.* (2008) 166 Cal.App.4th 61, 66–67 [82 Cal.Rptr.3d 148]; *In re David D.* (1997) 52 Cal.App.4th 304, 309 [60 Cal.Rptr.2d 552].)

In *Packard, supra,* 131 Cal.App.3d 622, the defendant took money from his employer over a three-year period by submitting false invoices. (*Id.* at p. 625.) Charged with three counts of grand theft based solely on the fact that the thefts occurred over three calendar years (*id.* at pp. 625–626), he argued that under *Bailey*, he could be convicted of only one grand theft because there was "no reasonable basis in the record for concluding [he] had three separate schemes, each based neatly on calendar years, as distinguished from either one general scheme or a separate theft for each invoice and payment." (*Packard*, at p. 626.) The People argued that the three counts were authorized by the language of section 487, which proscribed thefts by employees in aggregate amounts over $200 "in any 12 consecutive month period . . . ." (*Packard*, at p. 626.)

The appellate court rejected the People's argument: "This provision, enacted in 1955, simply enables the prosecution, under specified conditions, to cumulate a series of petty thefts into a grand theft, without having to prove a single intent or scheme. [Citation.] The provision does not purport to authorize multiple grand theft prosecutions where a series of takings over several years is done pursuant to a single impulse and plan." (*Packard, supra,* 131 Cal.App.3d at p. 626.) The court found the People failed to establish a basis for an inference that the thefts were committed pursuant to three separate yearly schemes. In the absence of any evidence supporting such an inference, the only reasonable conclusion was that the employee had a continuing plan to steal money from his employer by submitting false invoices and thus he could be convicted of only one grand theft. (*Id.* at pp. 626–627.)

Both *Bailey* and *Packard* demonstrate that "[w]hether there were separate independent takings or one general scheme is a question of fact based on the particular circumstances of each case." (*Packard, supra,* 131 Cal.App.3d at p. 626; see *Bailey, supra,* 55 Cal.2d at p. 519 [the question of "[w]hether a series of wrongful acts constitutes a single offense or multiple offenses" requires a fact-specific inquiry that depends on an evaluation of the defendant's intent].) Such an inquiry is appropriately left to the fact finder in the first instance, and as with other such factual questions, reviewing courts will affirm the fact finder's conclusion that the offenses are not "separate and distinct," and were "committed pursuant to one intention, one general impulse, and one plan" so long as that conclusion is supported by substantial

evidence. (*Bailey, supra,* 55 Cal.2d at p. 519; see *In re Arthur V., supra,* 166 Cal.App.4th at p. 69; see also *People v. Slocum* (1975) 52 Cal.App.3d 867, 888–889 [125 Cal.Rptr. 442] [discussing *Bailey* principle in terms of requisite jury instruction].) The People do not point to, and we are unable to find, any evidence of separate and distinct intents on the part of Tabb. As in *Packard,* there is an absence of evidence that Tabb's thefts were committed pursuant to different schemes or plans depending on the day or other circumstance.

The People maintain that the principles of *Bailey* and *Packard* have nothing to do with the question of whether a defendant can be convicted of both grand theft and grand theft by an employee. They argue *Bailey* is inapposite because the People "did not proceed only under the theory of theft as part of an overall plan" but rather "such was just one possible theory." The People's argument does not persuade us to conclude that Tabb is entitled to be convicted of multiple grand thefts arising from the same plan. Having chosen to pursue the theory that Tabb's petty thefts should be aggregated to convict him of felony grand theft of property worth more than $400, the prosecution was entitled to obtain only one theft conviction, absent evidence that the charged offenses were separate and distinct and they were not committed pursuant to a single general impulse, intention or plan. (*Bailey, supra,* 55 Cal.2d at p. 519.) Under the circumstances, we reverse the count 2 offense of grand theft by an employee.

## II. *The Count 3 Petty Theft Conviction Must Be Reversed*

Tabb contends his count 3 offense of petty theft with a prior is a lesser included offense of grand theft, requiring reversal of his count 3 conviction. The People concede that petty theft with a prior is a lesser included offense of grand theft, but argue that the count 3 offense here is not because it involved the theft that took place on April 4, 2007, a theft that assertedly had no bearing on Tabb's grand theft that occurred over the course of different dates in which he stole well over $400 worth of materials. Thus, the People argue: "Here, appellant could have committed the grand theft of personal property between January 16[, 2007] and April 4[, 2007] as charged in Count 1, and the grand theft by employee between those same dates as charged in Count 2, *without* committing the petty theft on April 4[, 2007] as charged in Count 3."

■ It is misplaced to argue that the People may charge Tabb with both petty and grand theft by cumulating some, but not all, of the thefts. The relevant question under *Bailey, supra,* 55 Cal.2d 514 and *Packard, supra,* 131 Cal.App.3d 622 is whether Tabb's thefts result from the same conduct, intent or plan. In deciding this "same conduct" issue, we may rely on the evidentiary record. (*Ortega, supra,* 19 Cal.4th at pp. 699–700.) As stated, we are unable to ascertain evidence in the record that would permit a reasonable jury

to conclude Tabb had a separate and distinct intent or plan on April 4, 2007, than on the other days he took BAE property to A to Z. As a consequence, we reverse Tabb's count 3 conviction for petty theft.

### III.   *Sufficiency of the Evidence of Grand Theft Conviction*

Tabb contends there is insufficient evidence to establish his theft from BAE. His argument has two components. First, he argues there is no "solid, credible evidence" of an actual taking of items from BAE for purposes of counts 1 and 2. Second, he argues there is no evidence he had the requisite intent to permanently deprive BAE of property for purposes of count 3. Given our conclusion above as to count 3, we need not reach Tabb's latter argument.

On Tabb's challenge to the evidence supporting his grand theft conviction, we evaluate the whole record to ascertain whether there is substantial evidence to support the verdict. (*People v. Cole* (2004) 33 Cal.4th 1158, 1212 [17 Cal.Rptr.3d 532, 95 P.3d 811].) We " 'view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence' " to determine whether a reasonable trier of fact could find guilt beyond a reasonable doubt. (*People v. Young* (2005) 34 Cal.4th 1149, 1175 [24 Cal.Rptr.3d 112, 105 P.3d 487]; see *People v. Cole*, at pp. 1212–1213.) The same standard applies when the prosecution relies primarily on circumstantial evidence. (*People v. Young*, at p. 1175.)

As for the taking, Tabb argues that none of the various BAE employees testified that "any of the items brought to A to Z were actually the property of BAE Systems or that this property or any other property was actually taken from the company." He points out that none of the witnesses testified "that the objects were so unique that they had to belong to BAE" or that, with the exception of the taking on April 4, 2007, they saw him take any of the property away from BAE.

Notwithstanding the absence of these evidentiary matters, substantial evidence was presented during the prosecution's case to support a finding that Tabb stole the items he brought to A to Z from BAE. The People were not required to prove Tabb took BAE materials with direct evidence. It was sufficient to present evidence that after Tabb began working at BAE, the amount and quality of materials he brought to A to Z increased; that they appeared to be ship parts that Tabb claimed were "throw-away" scraps that his employer permitted him to take; that BAE personnel identified the items in the photographs taken by A to Z personnel of Tabb's materials as items that would be in BAE's pipe shop; and that Tabb's time records virtually

consistently showed that on the days he went to A to Z to recycle materials, he worked at BAE. Further, BAE's security manager testified that two weeks' worth of videotapes taken of Tabb entering and leaving the premises showed his backpack appeared to be empty when he entered, and larger, full, and much heavier when he left for lunch.

This evidence, combined with testimony from BAE managers explaining there was no reason for Tabb to have such materials and the company had no policy to allow employees to take materials for recycling, amply warrants an inference that the items Tabb brought to A to Z were materials he stole from BAE. As stated, substantial evidence includes circumstantial evidence and the reasonable inferences the evidence allows. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11 [82 Cal.Rptr.2d 413, 971 P.2d 618]; *People v. Pierce* (1979) 24 Cal.3d 199, 210 [155 Cal.Rptr. 657, 595 P.2d 91] ["Circumstantial evidence may be sufficient to connect a defendant with the crime and to prove his guilt beyond a reasonable doubt."].) And in a case based on circumstantial evidence, our observation in *People v. Palmore* (2000) 79 Cal.App.4th 1290 [94 Cal.Rptr.2d 784] is germane: " 'Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court, which must be convinced of the defendant's guilt beyond a reasonable doubt. " 'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment.' " ' " (*Palmore*, at p. 1298; see also *People v. Thomas* (1992) 2 Cal.4th 489, 514 [7 Cal.Rptr.2d 199, 828 P.2d 101].) Thus, " 'where the jury rejects the hypothesis pointing to innocence by its verdict, and there is evidence to support the implied finding of guilt as the more reasonable of the two hypotheses, this court is bound by the finding of the jury.' " (*People v. Towler* (1982) 31 Cal.3d 105, 118 [181 Cal.Rptr. 391, 641 P.2d 1253].) From the facts presented, the jury reasonably concluded Tabb was guilty of taking parts from BAE for purposes of his grand theft conviction.

### IV. *Sufficiency of Evidence to Support Restitution Award*

Tabb contends there is insufficient evidence to support the trial court's award of $39,688 in victim restitution to BAE. Specifically, he argues the amount as testified by Frei, BAE's director of material management, was not based on replacement cost but rather was an arbitrary and capricious estimate because he had "no idea of exactly what was allegedly taken from BAE." The People respond that Tabb waived the contention by failing to object to the probation officer's recommendation as to restitution, but that there is sufficient evidence to support the order in any event.

We review a trial court's restitution order for abuse of discretion. (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542 [74 Cal.Rptr.3d 901]; *In re Anthony M.* (2007) 156 Cal.App.4th 1010, 1016 [67 Cal.Rptr.3d 734].) The court does not abuse its discretion if there is a factual or rational basis for the amount of restitution ordered; it " 'must use a rational method that could reasonably be said to make the victim whole, and may not make an order which is arbitrary or capricious.' " (*People v. Fortune* (2005) 129 Cal.App.4th 790, 794 [28 Cal.Rptr.3d 872], quoting *People v. Thygesen* (1999) 69 Cal.App.4th 988, 992 [81 Cal.Rptr.2d 886].) Reversal is warranted where the restitution order exceeds the bounds of reason under all the circumstances being considered. (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1121 [43 Cal.Rptr.2d 681, 899 P.2d 67].) Further "the standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt. [Citation.] 'If the circumstances reasonably justify the [trial court's] findings,' the judgment may not be overturned when the circumstances might also reasonably support a contrary finding." (*People v. Baker* (2005) 126 Cal.App.4th 463, 469 [23 Cal.Rptr.3d 871]; see also *People v. Gemelli*, at p. 1542.) In reviewing the evidence, we do not reweigh or reinterpret it; we only determine whether there is sufficient evidence to support the inference drawn by the trier of fact. (*People v. Baker*, at p. 469.)

Here, we need not reach the People's forfeiture argument, for as we explain, the trial court had a rational and factual basis to award $39,688 in restitution through Frei's testimony estimating the value of the materials taken by Tabb. Frei, who was in charge of purchasing materials for BAE, testified about the method he used to calculate the value of the items taken by Tabb to A to Z. With respect to the yellow brass, he reviewed A to Z's pictures of the materials brought in by Tabb and picked a representative sample from BAE: a three-quarter-inch brass coupling. He ascertained the total weight of that material on the invoice kept by A to Z on Tabb's recycling activities (starting after his employment at BAE), divided it by the weight of one of the brass couplings, and reached a figure of 1,296 as an estimate for the number of couplings taken from BAE. Frei then obtained the contract price of each coupling from the buyer ($29.28) and multiplied that by the number of items to reach a value of $37,947. With respect to the cupronickel, Frei testified he saw from A to Z's inventory that Tabb had brought in 157 pounds and estimated its value at $10 per pound based on his experience as a materials manager and purchasing supervisor, for a total value of $1,570. He estimated the value of the scrap electrical wire to be $171. All of Frei's testimony was received without objection. According to Frei's estimates and calculations, the total loss to BAE was $39,688 in materials.

Contrary to Tabb's arguments, Frei's testimony provided a rational and logical method for calculating BAE's replacement value of the material stolen by Tabb. While A to Z may not have photographed every single item Tabb

brought in for recycling, the photographs it did take showed representative pieces that BAE managers identified at trial as parts used at BAE in pipe fitting. Given the photographic evidence tying the items to Tabb, it was not mere speculation nor was it arbitrary for Frei to ascertain the value of the couplings taken by Tabb by assessing the types of materials Tabb regularly brought to A to Z for recycling. Further, Frei was entitled to reach a value of materials based on his work experience. Tabb made no objection to Frei's estimates or qualifications at trial.

In *People v. Foster* (1993) 14 Cal.App.4th 939 [18 Cal.Rptr.2d 1], superseded by statute on other grounds as stated in *People v. Birkett* (1999) 21 Cal.4th 226, 238–245 [87 Cal.Rptr.2d 205, 980 P.2d 912], the Fourth District, Division Two, of the Court of Appeal held a victim's testimony of the original cost of a stolen or damaged item was competent evidence of replacement cost and sufficient to support a restitution award. (*Foster*, at p. 948; see also *Gemelli, supra*, 161 Cal.App.4th at p. 1543.) The court acknowledged that in many other contexts, an owner's opinion of the value of his or her property is sufficient evidence to establish value, and in the context of the relaxed procedure to determine conditions of probation "there [was] no justification for requiring a *more* stringent rule . . . ." (*Foster*, at p. 948.) In *Gemelli*, the same Court of Appeal, relying on *Foster*, declined for policy reasons to follow other cases requiring more than "a victim's statement of loss and a probation officer's recommendation as prima facie evidence of value to determine an appropriate amount of restitution . . . ." (*Gemelli*, at p. 1543.) The court explained that the statute governing restitution does not require any particular kind of proof, but a trial court is entitled to consider the probation report and may accept a property owner's statement made in a probation report about the value of stolen or damaged property as prima facie evidence of loss. (*Ibid.*) "Once the victim makes a prima facie showing of economic losses incurred as a result of the defendant's criminal acts, the burden shifts to the defendant to disprove the amount of losses claimed by the victim." (*Ibid.*)

Here, Tabb has not disproven BAE's economic losses. At best, his arguments challenging Frei's method of calculating value raise a question about the *weight* to be given his testimony, a matter that is not within this court's province on our review for substantial evidence. Having found substantial evidence in the record supporting the value of BAE's loss, we conclude the trial court did not abuse its discretion in its restitution award.

## DISPOSITION

The convictions on counts 2 and 3 are reversed. In all other respects the judgment is affirmed. The trial court is directed to prepare an amended

abstract of judgment in accordance with this disposition and to send a copy of the amended abstract to the Department of Corrections and Rehabilitation.

Haller, Acting P. J., and McIntyre, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 13, 2009, S171242.