Filed 1/7/14  P. v. Wright CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E057080 |
| v. | (Super.Ct.No. FMB1100044) |
| VIRGILIA DEMETERIO WRIGHT, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Daniel W. Detienne, Judge.  Affirmed.

Joanna Rehm, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Elizabeth M. Carino, Deputy Attorneys General, for Plaintiff and Respondent.

1

The People charged defendant and appellant Virgilia Demeterio Wright by information with theft from a dependent adult (count 1 – Pen. Code, § 368, subd. (d))[1] and grand theft by embezzlement (count 2 – § 487, subd. (a)).  Defendant entered into a plea agreement in which she pled nolo contendere to count 1, and count 2 was dismissed.  Pursuant to her plea agreement, the court sentenced defendant to 36 months of felony probation; however, the court reserved jurisdiction on the imposition of victim restitution as a term of defendant's probation.

After a two-day restitution hearing, the court ordered defendant pay total restitution of $35,600 to the victim.  On appeal, defendant contends the court erred in admitting page two of exhibit 4, ordering $6,600 in restitution for money taken from the victim's Pacific Marine bank account, and $22,000 in restitution for money received from the victim's aunt.  We affirm.

## FACTS[2]

The victim, a 47-year-old man diagnosed as having the mental capacity of a 10 year old, lived with his mother who assisted him with his financial matters until she passed away in February 2009.  The defendant, an acquaintance of the victim's mother, assumed caretaking duties over the victim after his mother died, as she had previously

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] The parties stipulated the police report and complaint would provide the factual basis for the plea.  Although the police report is contained in the record, we take a portion of our statement of the facts from the probation report because the police report was not admitted into evidence at the restitution hearing, while the probation officer's report was.

promised the victim's mother she would. The victim had worked full time as a janitor on a Marine base for the preceding 23 years. He earned approximately $1,400 a month.

The victim testified he and his mother owned a home together. On March 12, 2009, defendant and the victim signed a contract in which they agreed to repay a loan from the victim's aunt and uncle, Roberta and John Gunderson, for $2,150; the purpose of the loan was to pay for "remodification fees of $1500.00 and the first month[']s mortgage [payment] of $650.00." The victim's home was foreclosed upon shortly after his mother died. Defendant admitted to the probation officer she lived with the victim in the home for six months after the victim's mother died; she reported they were evicted because the victim did not pay the bills. Thereafter, the two lived in an apartment from which they were evicted after two months for failure to pay rent.

The victim testified he never had possession of an ATM card with respect to his Pacific Marine bank account. Rather, defendant had obtained possession of the card and used it to make unauthorized withdrawals from his account. Defendant was later found in possession of the victim's ATM card. Defendant was shown printouts reflecting she had visited casinos 20 to 25 times per month during which she withdrew money from the victim's bank account.

The victim informed the probation officer defendant would give him approximately $10 to $15 of his money each week, and withdraw the rest to spend gambling at local casinos. The victim reported being evicted from two residences because defendant failed to pay rent.

3

Defendant received another $22,000 from Roberta Gunderson to pay for the victim's care. Instead, she used the money to gamble. Defendant admitted to the probation officer she received thousands of dollars from the victim's aunt that was for the victim, but which she kept for herself. When asked on what she spent the money, defendant responded, "[i]t's personal." She admitted she had no intention of paying the money back.

Defendant acknowledged receiving $22,000 from the victim's aunt that defendant owed her. The victim wrote a letter that was attached to the probation officer's report which reads, in pertinent part, "[m]y [a]unt [] [] sent [defendant] over $20,000 since my mother died because she said she needed it to care for me. I never saw any of it and no bills were paid, and she didn't pay rent so I got evicted twice."

The victim owned a 2005 Chevrolet Cobalt worth $7,000 that defendant convinced him to put her name on the title so it would be easier to pay registration and make repairs. She admitted selling the vehicle without the victim's knowledge or permission.

After the victim was evicted from his last residence, he showed up at his mother's next door neighbor's home with nowhere to live and no money; he moved in with them. Sometime thereafter, on August 20, 2010, defendant attempted to force the victim into her car to take him to the bank and withdraw money for her. The neighbor with whom the victim was living was the reporting party. Police arrested defendant on February 9, 2011.

4

The sentencing court originally reserved jurisdiction over victim restitution as conditions of defendant's probation for a future contested restitution hearing; however, the sentencing minute order reflects two conditions of defendant's probation, terms 17 and 18, required defendant to pay victim restitution of $32,097 to the victim and $22,000 to Roberta Gunderson, respectively. At the beginning of the restitution hearing, the court noted the error, and corrected the record to reflect terms 17 and 18 had been suspended to be reserved for imposition after completion of the restitution hearing.

## DISCUSSION

A.    Admission of Exhibit 4.

During the restitution hearing, the People sought to lay the foundation for introduction of exhibit 4 into evidence.[3] Defendant's counsel objected noting "[t]his seems to be evidence of an outside contract. It is not any kind of agreement to pay [the] [victim] anything." The court responded, "[w]ell, since this is a restitution hearing I have wide latitude to admit all kinds of documents that [are] hearsay. Overruled, but it will be subject to a motion to strike later."

The victim testified the money loaned by his uncle and aunt to he and defendant was for the purpose of taking care of him. The prosecutor asked if the victim had ever

---

[3] Exhibit 4 is a two-page document. The first page is a promissory note dated March 12, 2009, signed by defendant and the victim, promising to pay Roberta and John Gunderson $2,150 as soon as possible, but no longer than within three years. It reflects that $1,500 is for "remodification fees" and $650 is for the first month's mortgage payment. It additionally indicates the victim and defendant will repay the $1,500 for the first and last months' rent when the property is re-rented.

5

seen the second page and if he knew what it was. The victim responded, "[s]ummary of money and dates." The prosecutor then asked if he had ever talked about the money his aunt had lent defendant to take care of him. The victim answered he had not and did not know how much money his aunt lent defendant.

The second page of exhibit 4 appears to have a Post-it with John Gunderson's name placed over a portion of a copy of the promissory note. However, it additionally contains a list of 12 dates beginning with March 1, 2009, and ending with March 25, 2010, with corresponding amounts of money. At the bottom of the list is an amount totaling $24,250. The exhibit does not specify to whom the money was given, if it was also a loan, or for what purpose the money was given.

At the end of the hearing, defendant's counsel again objected to admission of exhibit 4, this time on the basis of relevance. Counsel noted the second page of the exhibit had not been authenticated by anyone. The court ruled "[s]ince this is a restitution hearing and the rights of a defendant are severely limited, and hearsay documents are generally admissible, I'll admit it into evidence and just give it whatever weight I think it deserves."

On appeal, defendant contends the court abused its discretion in admitting the second page of exhibit 4 into evidence. We disagree.

A restitution hearing does not require any particular kind of proof. (*People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1320 citing *People v. Keichler* (2005) 129 Cal.App.4th 1039, 1048.) Indeed, "'''''[S]entencing judges are given virtually unlimited

6

discretion as to the kind of information they can consider and the source . . . whence it comes.' [Citation.]" [Citation.] [¶] This is so because a hearing to establish the amount of restitution does not require the formalities of other phases of a criminal prosecution. [Citation.]"'" [Citation.]" (*People v. Brunette* (2011) 194 Cal.App.4th 268, 284.) We review the admission of evidence relied upon to support the court's restitution order for abuse of discretion. (*People v. Phu* (2009) 179 Cal.App.4th 280, 283-284 [Trial court restitution order based on speculative date of the beginning of the diversion of electrical power reasonably corroborated by other evidence and proper where goal is to fully compensate victim.].)

Here, although at the hearing the victim could not testify as to what the second page of exhibit 4 represented, he had previously informed the probation officer "[m]y [a]unt [] [] sent [defendant] over $20,000 since my mother died because she said she needed it to care for me. I never saw any of it and no bills were paid, and she didn't pay rent so I got evicted twice." Defendant acknowledged to the probation officer she had received $22,000 from the victim's aunt. Page two was attached to page one, which was properly authenticated by both the victim and defendant. Page two appeared to have a Post-it with the victim's uncle's name printed on it.

Moreover, several of the apparent deposit amounts and dates reflected on page two are reflected in the bank statements admitted at trial. Finally, it is notable that the total reflected on page two, $24,250, is only a $100 difference between the total of the $22,000 defendant admitted she owed to the victim's aunt and the $2,150 reflected in the

promissory note on page one.  Thus, the court acted within its discretion in admitting exhibit 4 in its entirety.

      B.     Restitution in the Amount of $22,000.

Defendant contends the court abused its discretion in awarding $22,000 in restitution to the victim when the evidence established this was a loan to her from the victim's aunt, not to the victim.  We disagree.

"[W]e review the trial court's restitution order for abuse of discretion. [Citations.]" (*People v. Giordano* (2007) 42 Cal.4th 644, 663-664.)  "While we review all restitution orders for abuse of discretion, we note that the scope of a trial court's discretion is broader when restitution is imposed as a condition of probation." (*Id*. at p. 664, fn. 7.)

"'At a victim restitution hearing, a prima facie case for restitution is made by the People based in part on a victim's testimony on, or other claim or statement of, the amount of his or her economic loss. [Citations.] "Once the victim has [i.e., the People have] made a prima facie showing of his or her loss, the burden shifts to the defendant to demonstrate that the amount of the loss is other than that claimed by the victim. [Citations.]" [Citation.]'" (*People v. Watson* (Oct. 8, 2013, D061668) __ Cal.App.4th __ [2013 WL 5530341].)

"Further 'the standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt. [Citation.]  "If the circumstances reasonably justify the [trial court's] findings," the judgment may not be overturned when

8

the circumstances might also reasonably support a contrary finding.' [Citations.] In reviewing the evidence, we do not reweigh or reinterpret it; we only determine whether there is sufficient evidence to support the inference drawn by the trier of fact." (*People v. Tabb* (2009) 170 Cal.App.4th 1142, 1153.)

"[T]he trial court is entitled to consider the probation report when determining the amount of restitution. A property owner's statements in the probation report about the value of her property should be accepted as prima facie evidence of value for purposes of restitution. [Citation.]" (*People v. Foster* (1993) 14 Cal.App.4th 939, 946-947 [Fourth Dist., Div. Two], superseded by statute on other grounds as stated in *People v. Birkett* (1999) 21 Cal.4th 226, 238-245.) The "'object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest.' [Citation.]" (*People v. Giordano, supra*, 42 Cal.4th 644 at p. 658.)

Here, the court imposed restitution as a term of defendant's probation;[4] thus, its discretion is even broader than that exercised when otherwise ordering restitution. Defendant admitted receiving $22,000 from the victim's aunt. Although defendant informed the probation officer she owed the money to the victim's aunt, she never characterized the money as a loan. On the other hand, the victim informed the probation officer his aunt had sent defendant over $20,000 in order to care for him. He "never saw any of it and no bills were paid, and she didn't pay rent so I got evicted twice."

---

[4] Indeed, apparently defendant had been making one hundred dollar monthly payments toward the victim restitution in term 17 of her probation conditions as erroneously reflected in the sentencing minute order.

9

As the court explained, "[i]t seems to me that this money was for him, and if I made a restitution order to him of $22,000, then it would be between him and the aunt whether he paid it back." Thus, it was within the trial court's discretion to conclude the money was a gift or loan from the victim's aunt to the victim entrusted to defendant to care for the victim. Defendant's failure to use the money to care for the victim supported the ordered restitution.

C.      Restitution in the Amount of $6,600.

Defendant contends the court abused its discretion in awarding restitution in the amount of $6,600 because the victim withdrew the majority of the funds himself. We disagree.

The People adduced evidence of the victim's bank statements from Pacific Marine Credit Union, which reflected a total amount of withdrawals of $6,595.75[5] between January 8, 2010, and August 6, 2010. Many of these withdrawals were made at local casinos. The victim testified he did not have an ATM card for his account, defendant did, and defendant's withdrawals were unauthorized. The victim also testified defendant would phone him on various occasions and ask that he put money in her account.

The victim informed the probation officer defendant would give him only $10 to $15 a week for food; she would spend the remainder of his paychecks on gambling at local casinos. Defendant and the victim were evicted from two residences due to

_____

[5] Defendant's opening brief reflects a figure of $6,571.75 which is $24 less than our figure. Our figure is obtained by totaling the victim's list of unauthorized transactions in exhibit 1, which includes a $24 withdrawal on June 26, 2010.

10

defendant's failure to pay rent. Moreover, defendant apparently had complete control over the victim's finances from February 2009 to August 20, 2010, when the victim showed up at the reporting parties' home without any money or a place to stay. The bank statements reflecting defendant's withdrawals from the victim's account only began in January 2010; thus, at least 10 months' worth of defendant's control over the victim's finances were not reflected in the exhibits adduced at trial. Therefore, the court acted within its broad discretion in ordering restitution in the amount of $6,600.

Defendant argues the victim made all the withdrawals himself, predating his report to the bank of unauthorized withdrawals beginning on June 26, 2010. She maintains she can only be held responsible for those withdrawals totaling $1,829.75,[6] which appear on the victim's report of unauthorized withdrawals. However, the court observed, "[t]he Pacific Bank, $6,600, it was pretty clear from [the] [victim's] testimony that was his account. He never gave [the] [defendant] permission to use the money from that account and the defendant, I think it is clear, took some of his money, she said she had a gambling problem, so I am going to award $6,600 from the Pacific Bank account" to the victim. Indeed, as discussed above, the victim indicated he never had an ATM card on the account, but defendant did. Moreover, it was within the court's discretion to make a credibility determination that any withdrawals made by the low functioning and illiterate

---

[6] Defendant's brief actually lists three figures: $1,820.79, $1, 829.79, and $1,829.75. We are using the correct figure $1,829.75.

victim himself were coerced by the defendant and used by her for herself.  The court's ordered restitution was within broad discretion.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:


RICHLI
J.


CODRINGTON
J.