Filed 12/18/20  P. v. Lockett CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B296211 |
| Plaintiff and Respondent, | (Los Angeles County. Super. Ct. No. BA474653) |
| v. | |
| TRAMEL SYLVESTER LOCKETT, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Gustavo N. Sztraicher, Judge.  Affirmed in part and reversed and remanded.

Robert Booher for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle and Colleen M. Tiedemann, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Tramel S. Lockett pleaded no contest to one count of theft of a vehicle and was sentenced to a five-year term, including a one-year enhancement under Penal Code section 667.5, subdivision (b).[1]  The trial court issued a restitution order of $25,000 to compensate the victim for the diminished value of the vehicle.  On appeal, Lockett contends this court should strike the one-year prior prison term enhancement in light of the enactment of Senate Bill No. 136 (SB 136).  (Stats. 2019, ch. 590 § 1.)  He also asserts the trial court erred when it ordered $25,000 in restitution.  We reverse and remand to the trial court with directions to strike the one-year term imposed for the section 667.5, subdivision (b) prior prison term enhancement.  Thereafter, the prosecution may agree to reduce the sentence by one year or withdraw from the plea agreement.  The trial court may also withdraw its prior approval of the plea agreement.  We otherwise affirm the judgment.

**FACTS**

Lockett drove a used 2012 Bentley GT convertible off the lot of Phillips Auto dealership without permission.  The vehicle was recovered six days later.  Lockett pleaded no contest to driving a vehicle without consent (Veh. Code, § 10851, subd. (a)) and admitted he suffered a prior prison term (§ 667.5, subd. (b)) and a prior strike (§§ 667, subds. (c), (e)(1) & 1170.21, subd. (c)(1)).  In presenting the plea agreement to the trial court, the prosecutor calculated the sentence as follows:  "The disposition is for the mid-term of Count 2, which is two years, and that's being multiplied by two to give you four years, and then plus one year for your [prison prior for burglary (§ 459)], to be a total of five

---

[1]    All subsequent section references are to the Penal Code unless otherwise specified.

years' state prison." The trial court approved the plea and sentenced Lockett accordingly.

At the subsequent restitution hearing, the parties stipulated to actual damages in the amount of $2,450. Phillips Auto also claimed an additional loss of value in the amount of $25,000. A Phillips Auto employee testified the Bentley had a book value of $110,000 prior to the theft. He further testified the theft had to be reported to Carfax, and a theft recovery on Carfax diminishes the value of the vehicle by 25 to 30 percent because buyers are typically less inclined to purchase a high-end car that has been stolen due to concerns the car could have been damaged.

Lockett argued the loss in value was unsubstantiated and presented a copy of the police report indicating there was no damage to the car. Lockett further advised the court that at the time of the hearing, the dealership had listed the car on its website for $99,960. The court credited the employee's testimony, finding "it is reasonable to conclude that the car has [a] diminished value of $25,000, given the theft," and ordered a total restitution amount of $27,450: $2,450 for the stipulated damages and $25,000 for the loss in value to the car.

Lockett appealed.

## DISCUSSION

### I. The Case Is Remanded To Strike the One-Year Enhancement and Permit the People To Either Accept a Reduced Sentence or Withdraw From the Plea Agreement

The parties agree, as do we, that SB 136 applies retroactively to Lockett's case because his prior prison term was not for a sexually violent offense, and his case was not yet final when the amendment took effect on January 1, 2020. (*In re*

3

*Estrada* (1965) 63 Cal.2d 740; *People v. Matthews* (2020) 47 Cal.App.5th 857, 864–865 (*Matthews*); § 667.5, subd. (b) [one-year prior prison term enhancement imposed only if the prior term was served "for a sexually violent offense"]; see Stats. 2019, ch. 590 § 1.) The parties, however, disagree as to the proper disposition in this case.

In his opening brief, Lockett urges us to strike the enhancement but leave intact the remainder of the sentence. Under this scenario, Lockett's sentence would be reduced to four years. The People oppose this disposition. They argue this court may not unilaterally lessen Lockett's punishment because it was the result of a negotiated plea agreement. While they agree the trial court must strike the one-year enhancement under SB 136, they argue the district attorney must be allowed to either accept the reduced sentence or withdraw from the plea agreement. In his reply brief, Lockett acknowledges the People's position and agrees the matter should be remanded for resentencing. He asserts his subsequent exposure on remand must be limited to a term of five years, however, leaving his original plea agreement intact. According to Lockett, this disposition "restores to the prosecution the benefits for which it bargained while at the same time not depriving appellant of the bargain to which he remains entitled." Two months after briefing was completed and two weeks prior to oral argument, we received a letter brief from Lockett advising us he intends to revert to his initial position in the opening brief that the enhancement should simply be stricken. Notwithstanding Lockett's changing position, we are persuaded by the People's argument.

4

Because this presents a pure question of law, we review the issue de novo.  (*People v. Rells* (2000) 22 Cal.4th 860, 870.)  The first published case to address the impact of SB 136 on a sentence that is the result of a plea bargain was *Matthews*, *supra*, 47 Cal.App.5th at page 869.  *Matthews* held a trial court lacks the power to alter a sentence imposed pursuant to a plea agreement in which the parties agreed to specific sentences "except to eliminate enhancements affected by Senate Bill No. 136."  (*Id.* at p. 866.)  The court reasoned "the purposes of Senate Bill No. 136 . . . would be frustrated if the trial court were allowed to unilaterally alter agreed-to terms of a plea agreement after striking enhancement sentences as required by Senate Bill No. 136."  (*Id.* at p. 868.)  *Matthews* thus "conclude[d] the trial court cannot, in striking the enhancements invalidated by Senate Bill No. 136 . . . , reconsider other aspects of the sentences Matthews and the People specifically agreed to under the plea agreements." (*Id.* at p. 869.)

Six months after *Matthews,* the Fifth District published *People v. Hernandez* (2020) 55 Cal.App.5th 942 (*Hernandez*), review filed Nov. 23, 2020.  *Hernandez* agreed with *Matthews* that SB 136 required the prior prison term enhancement be stricken even when it is part of a negotiated plea bargain. (*Hernandez, supra,* at p. 960.)  *Hernandez* conducted an extensive review of relevant Supreme Court authority, including *People v. Stamps* (2020) 9 Cal.5th 685 (*Stamps*), which the high court published after *Matthews* and addresses the impact Senate Bill No. 1393—which gives a trial court discretion to strike a serious felony enhancement pursuant to section 667, subdivision (a)—has on a sentence that is the result of a plea agreement.  (*Stamps, supra*, 9 Cal.5th at pp. 692, 701–703.)  Following the disposition

in *Stamps, Hernandez* held that once the enhancement is stricken or dismissed, the prosecution must be allowed to withdraw from the plea agreement, and the trial court may withdraw its approval of the plea agreement. (*Hernandez*, *supra*, 55 Cal.App.5th at p. 960.) *Hernandez* found "there is no evidence the Legislature intended Senate Bill 136 to permit the trial court to unilaterally modify a plea agreement once the prior prison term enhancements are stricken." (*Id.* at p. 958.)

We agree with *Hernandez* that remand for resentencing is appropriate where the sentence is a result of a plea agreement. *Hernandez* provides an extensive review of the legislative history of SB 136 and relevant Supreme Court and Court of Appeal cases that "address[] the impact of amendments or repeals of statutes, either by the legislative or initiative process, that had provided for sentences that were part of a plea agreement for a specified sentence." (*Hernandez, supra,* at 949.) We need not repeat *Hernandez's* well-reasoned analysis here.

We remand the matter to the superior court with directions to strike the one-year prior prison term enhancement under section 667.5, subdivision (b). Thereafter, the People may agree to the reduced sentence or withdraw from the plea agreement. The court may also withdraw its prior approval of the plea agreement. (*Hernandez*, *supra*, 55 Cal.App.5th at p. 960; see *Stamps, supra,* 9 Cal.5th at pp. 707–708.)

## II. The Trial Court Did Not Abuse Its Discretion to Award Restitution In the Amount of $25,000

Lockett next asserts the trial court abused its discretion when it ordered $25,000 in restitution to be paid to Phillips Auto. According to Lockett, that amount is entirely speculative because it is unsupported by the evidence. We disagree.

6

**A. Governing Law**

"It is the intent of the Legislature that a victim of crime who incurs any economic loss as the result of the commission of a crime shall receive restitution directly from any defendant convicted of that crime." (§ 1202.4, subd. (a).) To achieve this goal, the trial court has broad discretion to order restitution so that every victim is *fully* compensated for their loss. (*People v. Giordano* (2007) 42 Cal.4th 644, 654 (*Giordano*).) The victim must make a prima facie showing of economic loss caused by the defendant's criminal act that establishes the amount claimed by a preponderance of the evidence. (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542 (*Gemelli*).) The trial court may rely solely on the victim's statement to assess the loss of value to the stolen or damaged property. (*Id.* at p. 1543; see *People v. Keichler* (2005) 129 Cal.App.4th 1039, 1045 [a property owner's statement about the value of the property is sufficient to make a prima facie showing of economic loss].) "Once the victim makes a prima facie showing of economic losses incurred as a result of the defendant's criminals acts, the burden shifts to the defendant to disprove the amount of losses claimed by the victim." (*Gemelli*, *supra,* at p. 1543.)

We review a trial court's restitution order for an abuse of discretion. (*Giordano*, *supra,* 42 Cal.4th at p. 663.) "No abuse of discretion will be found where there is a rational and factual basis for the amount of restitution ordered." (*Gemelli, supra,* 161 Cal.App.4th at p. 1542.)

**B. The People Made a Prima Facie Showing**

We are persuaded by *Gemelli*, *supra*, 161 Cal.App.4th 1539, the trial court had a rational and factual basis to order $25,000 in restitution in this case. In *Gemelli*, the trial court based a

restitution order on a handwritten statement from the burglary victim and the probation officer's recommendation, which was based solely on the victim's statement. (*Id.* at p. 1544.) The victim's statement listed individual repair and labor costs incurred as a result of the burglary that totaled $7,073. (*Ibid.*) Although the victim's list was self-generated and uncorroborated by receipts or other documentation, the court found the list was credible and constituted sufficient evidence to make a prima facie case for the claimed damages. (*Ibid.*)

As in *Gemelli*, the trial court here based its decision solely on the victim's statements regarding the loss in value. Long, the dealership's employee, estimated a theft would diminish the value of a high-end car by 25 to 30 percent. He further testified the theft "has to be disclosed" to a potential buyer, and that Carfax is the "first thing [buyers] pull when they look at Ferraris or high-end vehicles . . . . If there's fire, theft, or anything, . . . it just kills the car." Long explained people are less likely to purchase high end cars that have been stolen and recovered due to concern that the vehicle has been damaged. Following *Gemelli,* the trial court did not abuse its discretion to credit Long's testimony and find the People made a prima facie showing the value of the $110,000 car was diminished by $25,000 as a result of the theft.

Lockett relies on *People v. Vournazos* (1988) 198 Cal.App.3d 948 (*Vournazos*) to argue that Long's testimony was insufficient to make a prima facie showing. We are not persuaded. Like other courts before us, we reject the implication in *Vournazos* that more than a victim's statement of loss is required to establish loss. (*In re. S.S.* (1995) 37 Cal.App.4th 543, 547 [declining to follow *Vournazos* because the property owner's

8

statement should constitute sufficient evidence of value]; *People v. Foster* (1993) 14 Cal.App.4th 939, 946 [rejecting the reasoning in *Vournazos*].)

## C. Lockett Did Not Effectively Rebut the Claimed Amount

Once Phillips Auto made a prima facie showing of its claimed economic loss, the burden shifted to Lockett to rebut the validity of the amount claimed. (*People v. Fulton* (2003) 109 Cal.App.4th 876, 886.) Lockett presented a police report that stated "there was no damage to the car when it was recovered." He argued that although there may have been some scratches on the car, the damage was not significant enough for the police officer to note, and thus, it was unlikely that the value of the car was diminished by $25,000. The court did not find this evidence persuasive because a police officer "does not necessarily have the expertise in looking at a car of that value and determining what specific damages were sustained by that vehicle."

Again, *Gemelli*, *supra*, 161 Cal.App.4th 1539 is illustrative. In *Gemelli*, the defendant was a former employee of the restaurant she had robbed, and she attempted to dispute the credibility of the victim's list based on her knowledge of the victim's business practices. The court found the defendant's testimony "did not effectively rebut" the claimed economic losses because she did not present evidence that directly contradicted the amounts. (*Id.* at p. 1544.)

Similarly, Lockett's evidence pertaining to the extent of damages to the car did not directly rebut Long's testimony that the mere fact a car has been stolen greatly diminishes its value. The trial court was entitled to credit Long's testimony regarding the loss in value while placing less emphasis on the police report.

9

(See *People v. Tabb* (2009) 170 Cal.App.4th 1142, 1153 [credibility determinations are for the trier of fact, and "we do not reweigh or reinterpret" the evidence on appeal, "we only determine whether there is sufficient evidence to support the inference drawn by the trier of fact"].)

We reject Lockett's reliance on *People v. Valenti* (2016) 243 Cal.App.4th 1140, 1182 (*Valenti*) to argue that the restitution amount was "entirely speculative." *Valenti* is distinguishable because, in that case, the trial court awarded *noneconomic* restitution to victims of continuous child sexual abuse. (*Ibid.*) On appeal, the court concluded that there was no rational basis to support the $50,000 amount awarded to each child victim because the trial court "did not find facts, cite reliable evidence, or even explain how it arrived at the amount of restitution for each victim." (*Id.* at p. 1183.) Thus, the court reversed the restitution awards and remanded for a new hearing. (*Id.* at p. 1184.)

Lockett argues the amount of loss is speculative because he presented evidence the dealership relisted the Bentley for nearly $100,000, which is approximately $10,000 less than its value prior to the theft. Lockett also claims there was no evidence the dealership had actually reported the car stolen by the time of the restitution hearing, despite having had many weeks to do so. He argues that this "actively contradict[s] the dealership's claim of loss."

We repeat the long-established rule that credibility determinations are for the trier of fact, and "we do not reweigh or reinterpret" the evidence on appeal, "we only determine whether there is sufficient evidence to support the inference drawn by the trier of fact." (*People v. Tabb, supra,* 170 Cal.App.4th at p. 1153.)

10

Here, the record shows the trial court asked Long what he believed the car would realistically sell for in light of the relisted price, and Long replied he believed the car would probably sell for "between 75 and 85 [thousand dollars]." Long further testified "[the theft] has to be disclosed" to a potential buyer. Long's testimony provides a rational basis to support the conclusion that Lockett's criminal act diminished the value of the Bentley by $25,000. The trial court was entitled to discredit contrary evidence. The trial court did not abuse its discretion to order restitution in the amount of $25,000.

## DISPOSITION

The matter is remanded to the trial court with directions to strike the one-year term imposed for the section 667.5, subdivision (b) enhancement. Thereafter, the People may agree to modify the bargain to reflect the downward departure in the sentence or withdraw their assent to the plea agreement. Further, the court may withdraw its prior approval of the plea agreement. We otherwise affirm the judgment.

BIGELOW, P. J.

We Concur:

STRATTON, J.                    WILEY, J.

11