Filed 6/21/22  P. v. Majerus CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ALAN MAJERUS,<br><br>    Defendant and Appellant. | D078358<br><br><br>(Super. Ct. No. JCF000767) |

APPEAL from a postjudgment order of the Superior Court of Imperial County, Monica Lepe-Negrete, Judge.  Postjudgment order affirmed, with modification of judgment.

Justin Behravesh, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Steven T. Oetting, Acting Assistant Attorney General, Eric A. Swenson and Junichi P. Semitsu, Deputy Attorneys General, for Plaintiff and Respondent.

Alan Majerus appeals from the trial court's postjudgment order that he pay $17,408.87 in restitution to the victim of the offense to which he entered a no contest plea: inflicting corporal injury on his girlfriend, L.B. (Pen. Code, § 273.5, subd. (a).)[1]

Majerus contends that we should reverse the restitution order and remand for further proceedings because the trial court abused its discretion in denying defense counsel's request for a continuance of the restitution hearing. Specifically, Majerus contends that the trial court should have granted counsel's mid-hearing request for a continuance so that counsel could submit a police report. According to Majerus, the police report was relevant to rebut L.B.'s testimony that a $389.48 medical bill was the result of the injuries inflicted by Majerus. Majerus further contends that in the event we conclude the trial court did not abuse its discretion in denying the continuance, he is entitled to relief because defense counsel was ineffective by not earlier submitting the police report or earlier requesting a continuance.

In an argument that the People do not oppose, Majerus contends that, due to an erroneous calculation at sentencing, he is entitled to five more days of presentence custody credit.

We conclude that the trial court did not prejudicially err in denying defense counsel's request for a continuance of the restitution hearing. Further, Majerus's claim that he received ineffective assistance of counsel lacks merit. We concur with the parties that Majerus is entitled to five more days of presentence custody credit.

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

Accordingly, we affirm the restitution order, and we order a modification of the judgment to correct the number of days of presentence custody credit awarded to Majerus.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

L.B. was Majerus's girlfriend and lived with him.[2]  In April 2018, Majerus hit, strangled, and threatened L.B.

An information charged Majerus with one count of inflicting corporal injury on L.B. (§ 273.5, subd. (a)), and one count of making a criminal threat against her (§ 422, subd. (a)).

On September 9, 2019, Majerus pled no contest to one count of inflicting corporal injury on L.B.  (§ 273.5, subd. (a).)  The remaining count was dismissed.

Based on the terms of the plea agreement, on October 28, 2019, the trial court imposed and suspended an upper term sentence of four years and placed Majerus on three years of formal probation on the condition that Majerus serve 280 days in jail with credit for 280 days served.  The trial court directed the probation department to investigate the appropriate restitution and to "send the matter to the court on noticed motions."

Due to the probation department's delay in obtaining paperwork from L.B., a restitution hearing originally scheduled for January 2020 was taken off calendar.  On August 17, 2020, the probation officer filed a motion to calendar the restitution hearing.  In connection with that motion, the probation officer attached documentation received from L.B. to support a

[2]    We base this factual summary on L.B.'s testimony at the preliminary hearing, which Majerus identified as the factual basis for his plea of no contest.

3

request of restitution in the amount of $17,408.87. Among the items for which L.B. sought restitution was a medical bill from Havasu Regional Medical Center for $389.48. The bill indicated that the services were provided from August 21 to August 31, 2018, but it did not provide any detail about the nature of the services.[3]

A hearing was scheduled for August 24, 2020, which was then continued to September 14, 2020, at the request of Majerus. At that hearing, the matter was continued to September 30, 2020, at the request of the parties. Then, at the September 30, 2020 hearing, the matter was continued to October 26, 2020, at the request of the parties. On that subsequent date, the parties agreed to continue the matter to November 9, 2020. At the November 9, 2020 hearing, Majerus did not appear, and defense counsel requested a continuance, which the trial court granted over the objection of both the People and L.B.

A restitution hearing, held via video, proceeded on the merits on December 2, 2020, before the Honorable Monica Lepe-Negrete, who had not previously presided. At the beginning of the hearing, the trial court asked, "Are the People and defense ready to proceed on this motion?" The People indicated they wanted to proceed, even though Judge Lepe-Negrete had not previously presided. The People explained that they wanted to proceed because the matter had been continued multiple times, and L.B. had attended some of those continued hearings. Defense counsel did not respond to the trial court's question.

The trial court then explained, "I'll be honest with you, Counsel, I have not made a final determination as to whether or not I'm going to proceed

---

[3]     The bill indicated that the original amount was $140,542.19, of which $140,152.71 had already been paid.

today.  I can be convinced one way or the other."  The trial court then recited the history of the multiple continuances and confirmed L.B.'s presence.  The trial court concluded, "Because there does not appear to be any objection to me proceeding today, and I note there's been no objection orally anyway to me proceeding today, I will go ahead and proceed with the restitution hearing."

The trial court then proceeded with the hearing and requested that defense counsel identify any items included in the $17,408.87 restitution amount sought by L.B. to which Majerus had no objection.  Defense counsel stated that Majerus was not challenging medical expenses from two providers, which totaled $14,317.  However, Majerus was contesting L.B.'s moving expenses and certain other medical bills, including the bill for $389.48 from Havasu Regional Medical Center.

L.B. testified at the restitution hearing.  She explained that during the April 2018 incident for which Majerus was convicted, "I was strangled.  And there were multiple other occasions that I was strangled.  So I've been left with issues as far as my throat is concerned and critical function."  L.B. explained that she incurred medical bills related to those injuries.  Specifically, with respect to the bill from Havasu Regional Medical Center, L.B. gave the following testimony on direct examination:

> "Q.    And then there's a . . . Havasu Regional Medical Center bill on August 21st, 2018, for $389.48.  Can you tell us what that was for?
>
> "A.    I just—I would honestly have to look at the medical record. I—I submitted anything that was related to the direct incident resulting from the—resulting from the damage that was—that had occurred.  I submitted those medical records—or not the medical records, but the bills for it.  I'd have to honestly look at the medical record to tell you what was going on.  But it's all related to my throat.

5

"Q.    So it was another follow-up based upon the issues you were having with your throat.

"A.    Correct.

"Q.    And that was the throat issue that you had ever since the incident on—in April of 2018.

"A.    Correct."

On cross examination of L.B., defense counsel stated that he was looking at an incident report from the Lake Havasu Police Department from August 21, 2018, with L.B. listed as the victim (the Incident Report).  Defense counsel then pursued the following line of questioning:

"Q.    Are you familiar with that incident?

"A.    I—I cannot honestly recall that, no.

"Q.    Really?  That's surprising, [L.B.].  The incident report essentially states that you were—the injuries inflicted on that day were either inflicted by yourself or were inflicted by your son's girlfriend.  Does that help to fresh your memory?

"A.    My son's—no.  Absolutely not.  I don't—My son's girlfriend?

"Q.    Yes.  Additionally, the incident report states that you suffered a broken foot, had multiple cuts to the lower portion of your leg, an enlarged cut to your right ankle.  Does that help to refresh your memory?

"A.    I would—I would have to—like I said, I'd have to go back and look at the medical records, to be honest.  Everything that was related to this direct case, I submitted to the probation."

After this exchange, defense counsel informed the trial court that he was "hoping to attach the [I]ncident [R]eport as part of the evidence for this hearing" and "was hoping to get [the hearing] continued."  The trial court replied by saying, "Well, [defense counsel], I did ask if you were ready to proceed.  And you said you were ready to proceed.  So let's be clear on that.

6

There was no request by the defense for a continuance as far as the Court is concerned."[4]

On redirect examination, the prosecutor asked L.B. to confirm that the disputed medical expenses from Havasu Regional Medical Center and the other providers "to the best [of] your knowledge, that involved your neck, based upon the prior strangulation incident?" L.B. replied affirmatively: "Physical, mental, emotional, yes. I suffered from quite a few damages."

The trial court then delivered its tentative ruling to award L.B. all of the restitution that she sought. Specifically, as to the medical expenses from Havasu Regional Medical Center, the trial court gave the following tentative ruling:

> "As to the medical bills, [L.B.] testified that all except for Item 13, the Havasu, she testified without any doubt that they were all associated with her throat issues that resulted from the strangulation during the domestic violence incident that occurred on April 29th, 2018.
>
> "As to the Havasu, she did admit that she did not know specifically what it was for but that all of the medical records that she had submitted to the Court were, in fact, related to the incident of domestic violence that she suffered and from which the defendant was convicted.
>
> "She did admit to also having issues with some mental— sort of forgetfulness or points in time where she was not able to remember correctly certain things that happened. So she did testify that she suffered some sort of mental deficiency as a result of the strangulation and domestic violence incident perpetrated by the defendant and to which the defendant was convicted and sentenced to.

---

[4]    In a later exchange between defense counsel and the trial court, defense counsel correctly pointed out that although the trial court asked both the prosecutor and defense counsel whether they were ready to proceed, defense counsel did not respond and thus did not *expressly* state that he was ready to proceed.

7

"She did testify that she sought medical assistance thereafter due to persistent follow-up medical conditions as a result of swelling in her throat due to the strangulation.

"The Court found [L.B.] very credible in her testimony, and, as a result, all the medical bills will be—also found to be eligible as restitution and eligible to be recovered by [L.B.] under restitution as a victim of domestic violence."

The trial court then gave defense counsel an opportunity to present any evidence that would demonstrate that L.B. was not entitled to the restitution that she sought. Defense counsel again stated that he sought a continuance to submit the Incident Report, explaining that he was assigned to Majerus's case only the previous day.[5] The trial court explained that it was not going to continue the hearing because (1) the People's brief was filed months earlier on September 17, 2020; (2) the hearing was already continued several times after that brief was filed; and (3) defense counsel did not request a continuance at the beginning of the hearing when the trial court raised the issue and then noted there had been no objection to proceeding. The trial court stated, "Had you made that request, the Court would have been more than happy to oblige and consider it, despite the fact that the People were opposing."

Defense counsel then explained the relevance of the Incident Report. "I think that the incident report from Lake Havasu City Police is right on point because it shows that there were serious injuries that occurred on the date that she incurred those . . . bills. And when you read the incident report, it'll

---

[5]     As the trial court stated, defense counsel who appeared at the restitution hearing, Mr. Laue, worked for Majerus's attorney of record, Mr. Breeze. It was Mr. Breeze who assigned Mr. Laue to the matter at the last minute. The trial court observed, "it is . . . not the People's or the victim's or the Court's fault that decisions were made in your office at the 11th hour."

say that there was a large cut and there were several cuts. And then [L.B.] could not make it to the door. And so it just makes a lot more sense that those bills were incurred as a result of the incident that occurred that day. And there's no nexus between the bills that come after that day and the incident in question. And so that's why I would like for the Court to take a look at that. I understand that it needs to be in front of the Court. If I had received it—the motion from the People when it was filed or days afterwards, I would have prepared my points and authorities within a timely manner, Your Honor."

The trial court observed that even if the hearing was continued to allow defense counsel to present the Incident Report, counsel would still need to lay a foundation for the admission of the report into evidence.[6] The trial court then asked the People to assert any evidentiary objections to the Incident Report. The People objected on the basis of relevance. Defense counsel responded by again explaining the relevance of the Incident Report: "Your Honor, [L.B.] is asking for compensation for medical bills that were incurred on August 21st of 2018. And for days after—for essentially the next month as well. And I believe that the incident report is very relevant because it demonstrates that the[re] were serious injuries that occurred on that date. And additionally it will state that after she received medical help from the fire department, she was transported for another medical help [*sic*]. And so I think it's very relevant, because if that's the case, it could be very—it would presumably be from the incident that occurred at that residence on that day.

---

[6]    Apart from the Incident Report, defense counsel unsuccessfully sought a continuance to submit three other documents, which he contended were relevant to his challenge to the moving expenses that L.B. sought to recover. Those documents are not related to the issues presented in Majerus's appeal, and we do not discuss them.

And so it would not be from an incident that occurred four months before. And so I think it's very relevant, Your Honor."

The trial court ruled that it would not continue the hearing for the purpose of allowing defense counsel to offer the Incident Report, but that *even if it did* admit the Incident Report it would *still* conclude that L.B. was entitled to restitution. "Even if I admitted it, [defense counsel], the police report— and you'd have to go through some hoops on that to get that admitted as evidence, lay a proper foundation, overrule any objections as to relevance and hearsay on a police report. However, even assuming that I did, that does not negate the victim's testimony to the Court and my finding that she is credible." The trial court explained, "[E]ven if I admitted this evidence, I still would find that it does not negate her right to restitution, based on her testimony and the finding that I made as her being credible in her testimony to the Court." The trial court therefore confirmed its tentative ruling, and it ordered restitution in the amount of $17,408.87.

Majerus filed a notice of appeal from the order awarding restitution to L.B.

## II.

## DISCUSSION

A.  *The Trial Court Did Not Prejudicially Err in Denying the Continuance*

Majerus contends that the trial court prejudicially erred in denying his request for a continuance to allow defense counsel to submit the Incident Report at the restitution hearing.

1.  *The Legal Standards Governing Restitution Hearings*

We begin our analysis by reviewing the legal standards applicable to an award of restitution. By statute, "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require

10

that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court." (§ 1202.4, subd. (f); see also Cal. Const., art. I, § 28, subd. (b).) As relevant here, to "the extent possible, the restitution order . . . shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct[.]" (§ 1202.4, subd. (f)(3).)

A defendant "has the right to a hearing before a judge to dispute the determination of the amount of restitution." (§ 1202.4, subd. (f)(1).) At such a hearing, "a prima facie case for restitution is made by the People based in part on a victim's testimony on, or other claim or statement of, the amount of his or her economic loss. [Citations.] 'Once the victim has [i.e., the People have] made a prima facie showing of his or her loss, the burden shifts to the defendant to demonstrate that the amount of the loss is other than that claimed by the victim.' " (*People v. Millard* (2009) 175 Cal.App.4th 7, 26.) " '[T]he standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt.' " (*People v. Tabb* (2009) 170 Cal.App.4th 1142, 1153.)

"Restitution hearings are intended to be informal." (*People v. Weatherton* (2015) 238 Cal.App.4th 676, 684.) " ' "Section 1202.4 does not, by its terms, require any particular kind of proof. . . ." ' ' "This is so because a hearing to establish the amount of restitution does not require the formalities of other phases of a criminal prosecution." ' " (*People v. Lockwood* (2013) 214 Cal.App.4th 91, 96.) " ' " '[S]entencing judges are given virtually unlimited discretion as to the kind of information they can consider' " ' " in determining victim restitution." (*People v. Phu* (2009) 179 Cal.App.4th 280, 283.) Further, at a restitution hearing, by statute, "[d]ocumentary evidence, such

11

as bills, receipts, repair estimates, insurance payment statements, payroll stubs, business records, and similar documents relevant to the value of the stolen or damaged property, medical expenses, and wages and profits lost shall not be excluded as hearsay evidence." (§ 1203.1d, subd. (d).)

"While the court need not order restitution in the precise amount of loss, it 'must use a rational method that could reasonably be said to make the victim whole, and may not make an order which is arbitrary or capricious.' " (*People v. Chappelone* (2010) 183 Cal.App.4th 1159, 1172.) A trial court's restitution order is reviewed for abuse of discretion. (*Id.* at p. 1173.)

2. *The Legal Standards Applicable to a Request for a Continuance*

We next turn to the legal standards applicable to a request for a continuance.

"Continuances in criminal cases may only be granted for good cause. (§ 1050, subd. (e).)" (*People v. Snow* (2003) 30 Cal.4th 43, 70.) "The court must consider ' " 'not only the benefit which the moving party anticipates but also the likelihood that such benefit will result, the burden on other witnesses, jurors and the court and, above all, whether substantial justice will be accomplished or defeated by a granting of the motion.' " ' " (*People v. Doolin* (2009) 45 Cal.4th 390, 450 (*Doolin*).) "An important factor for a trial court to consider is whether a continuance would be useful." (*People v. Beeler* (1995) 9 Cal.4th 953, 1003 (*Beeler*).) Further, "[a] showing of good cause requires a demonstration that counsel and the defendant have prepared . . . with due diligence." (*People v. Jenkins* (2000) 22 Cal.4th 900, 1037 (*Jenkins*).) "The determination of whether a continuance should be granted rests within the sound discretion of the trial court, although that discretion may not be exercised so as to deprive the defendant or his attorney of a

12

reasonable opportunity to prepare." (*People v. Sakarias* (2000) 22 Cal.4th 596, 646.)

"The party challenging a ruling on a continuance bears the burden of establishing an abuse of discretion, and an order denying a continuance is seldom successfully attacked. [Citation.] [¶] Under this state law standard, discretion is abused only when the court exceeds the bounds of reason, all circumstances being considered." (*People v. Beames* (2007) 40 Cal.4th 907, 920.)

3.    *The Trial Court Did Not Abuse Its Discretion*

At the restitution hearing, defense counsel argued that he should be granted a continuance to submit the Incident Report because he had been assigned to the matter, within his own law office, only the previous day. He also argued that a continuance should be granted because the Incident Report was relevant to the issue of whether the $389.48 medical bill from Havasu Regional Medical Center arose from the injuries inflicted by Majerus. However, as we will explain, the trial court was well within its discretion to deny the continuance.

First, the restitution hearing had already been continued multiple times, including at the request of Majerus. The victim, L.B., was inconvenienced by those continuances because she previously appeared for hearings that did not go forward. If the trial court granted defense counsel's request for a further continuance, L.B. would likely have been required to appear at *another* hearing to discuss the traumatic experience of incurring injuries as a result of Majerus's domestic violence. The trial court could reasonably rely on those facts in deciding to deny the continuance. (See *Doolin*, *supra*, 45 Cal.4th at p. 450 [in denying a continuance, the trial court may consider " ' " 'the burden on other witnesses' " ' "].)

13

Second, defense counsel's request for a continuance was not timely. According to statute, a motion for a continuance should be filed and served at least two days prior to a hearing, although the court may, in its discretion, waive that requirement upon a showing there was good cause for failure to timely file. (§ 1050, subds. (b)-(d).) Here, not only did defense counsel fail to timely file a motion to continue the hearing, he further waited until the middle of the restitution hearing to request a continuance, even after the trial court inquired whether he was ready to proceed. The trial court could reasonably conclude that defense counsel failed to show good cause for the untimely request.

Third, the trial court was within its discretion to conclude that defense counsel had not prepared for the hearing with due diligence. (*Jenkins*, *supra*, 22 Cal.4th at p. 1037 [a denial of a continuance may be based on counsel's lack of due diligence in preparation].) As the trial court pointed out, the People filed their brief for the restitution hearing on September 17, 2020, which was two and a half months before the December 2, 2020 hearing. Moreover, a month before the People's brief was filed, the probation department filed its August 17, 2020 motion and attached L.B.'s medical bills as exhibits. Although defense counsel, Mr. Laue, had been assigned to the matter only the day before the restitution hearing, his law office had been assigned to the matter throughout the relevant time period and thus had more than three months to prepare. Defense counsel made no showing that the Incident Report was unavailable prior to the restitution hearing or that any other circumstance had prevented his law office from submitting it to the court.

Finally, the trial court reasonably could conclude that a continuance would not "be useful." (*Beeler*, *supra*, 9 Cal.4th at p. 1003.) The trial court

14

gave defense counsel an extensive opportunity to explain the relevance of the Incident Report and to describe its content. Based on that description, the trial court concluded that, even if it were to grant a continuance to allow defense counsel to submit the report, the Incident Report would not change the outcome of the restitution hearing. As the trial court explained, even in light of the Incident Report, it found L.B. to be credible when she testified that the medical bills she submitted were related to the injuries caused by Majerus. Therefore, there would be no point in granting the continuance sought by defense counsel.

Based on all of the above factors, we conclude that the trial court did not abuse its discretion in denying the continuance.

4. *Majerus Cannot Establish That Any Error Was Prejudicial*

Even were we to conclude that the trial court erred in denying the continuance, Majerus would not be able to prevail on appeal unless he established that the error was prejudicial. (*Doolin, supra,* 45 Cal.4th at p. 450 [both an abuse of discretion and prejudice are required for a reversal based on the denial of a continuance].) Specifically, Majerus would have to establish it is reasonably probable a more favorable result would have been obtained absent the error. (See *People v. Hawkins* (1995) 10 Cal.4th 920, 945; *People v. Gonzalez* (2005) 126 Cal.App.4th 1539, 1549.)

Here, the purpose of the continuance sought by defense counsel was to present the Incident Report to the trial court. However, the trial court expressly considered the report, as described by defense counsel. Although the trial court did not have the *written* report to review, the trial court gave defense counsel ample opportunity to describe the content of the Incident Report. Having considered that description, the trial court determined that *even if* it admitted the Incident Report, it would still award restitution in the

15

amount of $389.48 for the medical bill from Havasu Regional Medical Center. Accordingly, Majerus cannot establish the reasonable probability of a more favorable result had the trial court granted a continuance to allow him to submit the Incident Report.

B.    *Majerus Cannot Establish the Prejudice Required for His Contention That He Received Ineffective Assistance of Counsel*

Majerus next argues that he received constitutionally ineffective assistance because defense counsel failed to either (1) submit the Incident Report prior to the restitution hearing; or (2) timely seek a continuance to submit the Incident Report.

A criminal defendant is constitutionally entitled to effective assistance of counsel.  (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15; *Strickland v. Washington* (1984) 466 U.S. 668, 684-685 (*Strickland*); *Doolin, supra*, 45 Cal.4th at p. 417.)  To establish ineffective assistance, "the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms. Second, the defendant must show resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different."  (*People v. Mai* (2013) 57 Cal.4th 986, 1009 (*Mai*).)  An ineffective assistance of counsel claim fails if the defendant makes an insufficient showing on either one of these components. (*Strickland*, at p. 687.)  "It is defendant's burden to demonstrate the inadequacy of trial counsel."  (*People v. Lucas* (1995) 12 Cal.4th 415, 436.)

"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.  The object of an ineffectiveness claim is not to grade counsel's performance.  If it is easier to dispose of an ineffectiveness

16

claim on the ground of lack of sufficient prejudice, . . . that course should be followed." (*Strickland, supra*, 466 U.S. at p. 697.)

In this case, it is easier to dispose of Majerus's claim of ineffective assistance on the ground of lack of prejudice. We accordingly take that approach without reaching the question of whether Majerus has established that counsel's performance was deficient. As we have discussed, although the trial court did not continue the hearing to allow defense counsel to attempt to get the Incident Report admitted into evidence, it nevertheless considered the content of that report, as described by defense counsel. Based on that description, the trial court concluded that it would award $389.48 in restitution for the medical bill from Havasu Regional Medical Center, *even if* the Incident Report was admitted into evidence. Accordingly, Majerus cannot establish "a reasonable probability that, but for counsel's deficient performance" in failing to take steps to submit the Incident Report, "the outcome of the proceeding would have been different." (*Mai, supra*, 57 Cal.4th at p. 1009.)

Based on the above, Majerus cannot establish the element of prejudice required to prove ineffective assistance of counsel.

C.    *The Judgment Is Modified to Correct an Error In the Calculation of Majerus's Presentence Custody Credits*

Finally, we address Majerus's contention that the trial court awarded an incorrect amount of presentence custody credits.

Based on section 2900.5, subdivision (a), "[a] defendant is entitled to actual custody credit for 'all days of custody' in county jail and residential treatment facilities, including partial days." (*People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 48.) Under section 4019, a defendant may earn additional presentence credits for good behavior, commonly referred to as conduct credits. (*Rajanayagam*, at p. 48.)

17

At Majerus's sentencing hearing, defense counsel represented that Majerus had 140 days of actual credit, and 140 days of conduct credit, for a total of 280 days. The People agreed that the calculation was correct, and the trial court accordingly used that figure in imposing sentence. The trial court's sentencing minute order stated that Majerus was ordered to serve 280 days in jail "with credit for 280 days already served, consisting of 140 actual days and 140 behavioral days."

Majerus argues, and the People agree, that the calculation of 280 days was erroneous based on the dates of Majerus's incarceration. Both parties calculate that Majerus should have received 285 days of presentence custody credit, consisting of 143 days actual credit, and 142 days conduct credit.[7] The parties' position is supported by the record, which shows Majerus was arrested on May 17, 2018, and released on bail on October 6, 2018.

When an error in presentence custody credits is brought to our attention on appeal, we may order a modification of the judgment to reflect the correct number of presentence custody credits pursuant to our authority to correct an unauthorized sentence. (*People v. Acosta* (1996) 48 Cal.App.4th 411, 428; *People v. Duran* (1998) 67 Cal.App.4th 267, 270.) Accordingly, we order a modification of the judgment to reflect that Majerus has 143 days

---

7      Section 1237.1 provides that "[n]o appeal shall be taken by the defendant from a judgment of conviction on the ground of an error in the calculation of presentence custody credits, unless the defendant first presents the claim in the trial court at the time of sentencing, or if the error is not discovered until after sentencing, the defendant first makes a motion for correction of the record in the trial court, which may be made informally in writing." (§ 1237.1.) Majerus has augmented the appellate record to include an order denying without prejudice his informal motion for correction of his presentence credits in the trial court.

actual credit, and 142 days conduct credit, for a total of 285 days of presentence custody credit.

## DISPOSITION

The postjudgment restitution order is affirmed. The judgment is modified to reflect Majerus has 143 days of actual credit plus 142 days of conduct credit, for a total of 285 days of presentence custody credit.


IRION, J.

WE CONCUR:


AARON, Acting P. J.


DATO, J.